### In re HOWARD P., Melissa R., Kenneth R.

Supreme Judicial Court of Maine.

Argued May 5, 1989.
Decided Aug. 7, 1989.

John M.R. Paterson (orally), Bernstein, Shur, Sawyer and Nelson, Portland, for appellant.

Bruce C. Shibles (orally) Margot Joly, Asst. Attys. Gen., Dept. of Human Services, Augusta, Charles C. LaVerdiere (Guardian Ad Litem), Wilton, for appellees.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

PER CURIAM.

The issue in this case is whether competent evidence supports the District Court's (Farmington, *Benoit, J.*) decision to terminate the mother's parental rights with respect to her three children pursuant to 22 M.R.S.A. §§ 4050–4058 (Supp.1988). Concluding that some of the trial court's critical findings are not supported by evidence warranting an abiding conviction that they are highly probable, *In re Misty Lee H.*, 529 A.2d 331, 332–33 (Me.1987), we vacate and remand.

On October 16, 1987, the Department of Human Services (DHS) filed a petition to terminate Ms. R.'s parental rights with respect to Howard (born March 3, 1975), Melissa (born August 11, 1978) and Kenneth (born June 28, 1980). The children had been in foster care since September of

1986. DHS removed them from their home when it discovered that their mother was maintaining a relationship with a man convicted of child sexual abuse. According to the evidence, Ms. R. suffers from a mixed personality disorder, and the three children suffer from emotional and intellectual impairments. Two of the children have been sexually abused by their mother's stepbrother and there is evidence that the children have been physically abused by their father. As a child Ms. R. was sexually abused by her father. Before their foster care the children had received inadequate discipline from their mother to foster their development. Ms. R. has a history of associating with men physically abusive to her. Until DHS forbade it, she pursued a relationship with a man who has served prison time for child sexual abuse and received no treatment. Ms. R. has done her best to comply with DHS requirements in the rehabilitation and reunification plan that preceded the petition to terminate parental rights, but she has not satisfied all the requirements. The District Court found that termination of parental rights is in the best interests of the three children; that Ms. R. is unable to protect her children from jeopardy and those circumstances are unlikely to change within a time reasonably calculated to meet the needs of the children; that Ms. R. is unable to take responsibility for her children within a time reasonably calculated to meet their needs; and that Ms. R. has failed to make a good faith effort to rehabilitate and reunify with her children. Ms. R. has appealed.

■ This appeal does not challenge the District Court's finding that termination of parental rights is in the best interests of the children. Before termination occurs, however, the statute requires that an additional criterion be met: abandonment; lack of good faith efforts at rehabilitation and reunification; failure of responsibility; or jeopardy. 22 M.R.S.A. § 4055(1)(B)(2). Abandonment is not an issue in this case.

■ With respect to rehabilitation and reunification, DHS must prove by clear and convincing evidence that "[t]he parent has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to section 4041." *Id.* § 4055(1)(B)(2)(b)(iv). The requirement is "a good faith effort," not a successful effort. The cross-reference to section 4041 incorporates requirements that the parent (1) maintain "meaningful contact" with the child, (2) seek and use appropriate services, (3) pay reasonable sums for support, (4) maintain contact with DHS, and (5) make good faith efforts to cooperate with DHS in developing and pursuing a reunification plan. DHS does not challenge factors 3 and 4, support payments and Ms. R.'s contacts with the Department. So far as the three remaining factors are concerned, Ms. R. has certainly satisfied the first, concerning meaningful contacts with her children. She has visited her children in their foster home every Monday for the allotted one-hour visit, missing only two occasions (once due to a car breakdown en route and once due to a storm; both times she called to let her children and the foster home know). Both she and the children have requested longer visits and visits to her home, but DHS has denied them. At least the two younger children look forward to the visits and are disappointed when she cannot come. She brings home-baked goods and gifts, and she plays and talks with the children. The dispute is really over factors 2 and 5—Ms. R.'s use of appropriate services and cooperation in developing and pursuing the reunification plan. Initially, DHS complained that Ms. R. refused to sign the plan because she did not agree with some of the charges against her, but DHS no longer maintains that she was required to sign the plan. DHS's main attack is that Ms. R. has been unsuccessful in her group therapy and her parenting classes required under the plan. The evidence is uncontradicted, however, that she was dismissed from group therapy against her wishes and that she has tried to re-enroll. She continues the parenting classes and, although her home visits were terminated because her teacher found she made insufficient progress, there is no suggestion that she is not trying. Thus there is no evidence to suggest a finding that she has not made

good faith *efforts*—albeit unsuccessful ones—to rehabilitate and reunify.

■ Like abandonment, the criterion of responsibility—that "[t]he parent has been unwilling or unable to take responsibility for the child within a time which is reasonably calculated to meet the child's needs"— simply does not apply here. The real issue in this case is jeopardy; is there clear and convincing evidence to support DHS's assertion that Ms. R. "is unwilling or unable to protect the child from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child's needs"? 22 M.R.S.A. § 4055(1)(B)(2)(b)(i). On this issue, the question before the District Court and before us is not whether the children should be removed from Ms. R.'s care and custody; that was decided affirmatively in the final protection order. The question today is whether Ms. R.'s parental rights should be completely terminated so that she has no further contact with the children even in foster care. The statutory test is Ms. R.'s ability to protect the children from jeopardy now and, if she is currently unable to protect them, whether the circumstances are likely to change within a time reasonably calculated to meet the children's needs.

■ The factor that prompted DHS to discontinue its efforts toward reunification and to seek a termination of parental rights was its fear for Ms. R.'s children resulting from her relationship with a man convicted of child sexual abuse who has received no treatment for his problem. The District Court apparently agreed with this concern. In its opinion it found that Ms. R. "continues to associate with [L.H.] who is known to be sexually and physically assaultive to children." We have searched the record in vain for any evidence that Ms. R. continues to associate with L.H. Instead, we discover evidence only that she discontinued the relationship with L.H. once she learned that the relationship would jeopardize her chances at reunifying with her children. Although she may be criticized for not having understood the risks on her own and for continuing the relationship until it became clear that DHS would seek to terminate her parental rights, there is no evidence to support the finding of an ongoing relationship.

■ A second important premise of the District Court's decision was the testimony of Dr. James Jacobs, a clinical psychologist. The District Court concluded that Dr. Jacobs had testified "and the court so finds, that there would be less trauma to these children by termination of parental rights, than would occur out of maintaining the status quo." The District Court thus apparently concluded that the children's current situation was traumatic to them. What Dr. Jacobs actually testified was:

> Certainly, removing a child permanently with no visitation or contact from their parents is a very serious thing to do in any child, no matter what degree of attachment they have. I guess that the— what has to be weighed, certainly, is that—how much harm would be done with attachment versus without, you know. And, in this particular case, if they were subjected to the same environment that they appeared to be, it certainly appeared that the harm they were suffering with that attachment would outweigh the harm that they would be suffering without it, all things being considered.

In context, it is apparent that Dr. Jacobs was discussing harm suffered by the children in their mother's care some two years before. But whether the children would be better off adopted or in foster care than they were at home two years before is not the test. The question is whether Ms. R. can protect them from jeopardy *now* or within a time reasonably calculated to meet their needs. Dr. Jacobs' testimony simply does not support the District Court's finding of jeopardy.

■ A third important factor in the District Court's decision was the conceded need of all three children for considerable counselling services. The testimony makes clear, however, that the need for counselling exists whether the children are in foster care, adopted, or at home. That factor,

therefore, does not support termination of parental rights.

Other findings of the District Court that could support its ruling do have an evidentiary basis in the record. But the findings we have described are so central to the District Court's decision that we cannot avoid concluding that they were determinative. We therefore vacate the judgment and, under the circumstances, direct that the case be assigned to a different judge on remand.

Because of our disposition of the case it is unnecessary to reach the remaining issues raised by the appellant.

The entry is:

Judgment vacated and remanded for further proceedings before a different District Court judge.

All concurring.